# Stark *versus* Stark.

1. The whole blood or their descendants will take real estate before the half blood.

2. An ancestor died having devised real estate to a daughter, who died seised of it, intestate, leaving brothers and sisters both of the whole and half blood, descended from the devising ancestor. *Held,* that those of the whole blood took her estate.

March 13th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Luzerne county.*

This was an amicable action of ejectment by John M. Stark against James F. Stark, A. H. Stark and D. S. M. Stark, to November Term 1866, in which the following facts were agreed

[Stark *v.* Stark.]

upon in the nature of a special verdict, and stated for the opinion of the court :—

" James Stark, in his lifetime, at and immediately before his death, was seised in fee of the land described in the writ, and being so seised, made his last will, whereof he made the defendants the executors. Under a clause in the will, he devised the three-tenth parts, undivided, of the tract, to his daughter, Mary Jane Stark, who afterwards married Charles Flagg.

" James Stark, in his lifetime, was the husband of three wives, by the first of whom he was the father of two children, by the second the father of other two children, whereof the present plaintiff is one, and by the third he was the father of other eight children, whereof the said Mary Jane Flagg was one: Afterwards the said Mary Jane Flagg died intestate, leaving neither issue, or husband or parent surviving her. The defendants herein represent the surviving children of James Stark by the third wife, and the heirs of one other child by the third wife, who has died since the death of James Stark, and before the death of Mary Jane Flagg, and thus representing, claim to hold the entire estate which was of said Mary Jane in the premises. The plaintiff claims also as an heir at law of the said Mary Jane.

" If the court are of opinion that he is entitled to recover, then judgment shall be entered in favor of plaintiff for (1-11 of 3-10) three one hundred and tenths part of the land described in the writ, otherwise judgment to be entered for defendants."

The court (Conyngham, P. J.) delivered the following opinion :—

" Mary J. Flagg, in whom the real estate in dispute was vested at the time of her death, under a devise from her father, James Stark, died intestate, without issue, father or mother surviving her, but leaving brothers and sisters of the whole blood, represented by the defendants, and brothers and sisters of the half blood, children of the same father, James Stark, though of different mothers, partially represented by the claim of the plaintiff.

" The single question arising under the case is, whether under the circumstances stated, a brother of the half blood can inherit a share of the property, in common with the brothers and sisters of the whole blood, being all children of the same father.

" We think that a careful consideration of the Intestate Act of 1833 will show that the question is free from any great difficulty. This act contains carefully compiled rules, intended to regulate the descent and transmission of property in all ordinary cases of intestacy ; if then the provisions of the act, in the case before us, apply to it, they must control our present decision. The act is so drawn up as to endeavor to meet progressively the various questions of transmission and descent, as in our present formation

of society, and the customs and habits of our people, they are commonly found to arise. The 1st, 2d and 3d sections refer to the cases of surviving husband and wife, lineal descendants, and father and mother, qualified partially by the proviso in the 9th section, the 4th section with its subdivisions, the 5th and 6th, also the 7th and other sections, not now requiring more especial reference, apply to the case of collateral heirs and kindred.

" The 4th and 6th sections seem to be the provisions particularly applicable to the case now under consideration ; and mainly of those, art. 3, section 4.

" The Act of 1833 was one of those reported by the commissioners to revise the civil code, and in their report they say that the sections of the new act now before us were taken from corresponding sections of the Intestate Law of 1794, and the supplement of 1797, and from non-variation being suggested, it was evidently intended to return them, so far as any question is presented by the present case, unaltered in principle, though slightly varied in language. They further say in their report as to the 6th section, that ' it provides for the transmission of real estate to brothers and sisters of the *half blood*, in the event of there being no person to take, as enumerated in the preceding sections ;' that is to say, as we understand, among collaterals, when there is neither father or mother, brothers or sisters of the *whole blood* or their descendants ; they also declare that this 6th section is copied from the 11th section of the Act of 1794, and the 7th section, Act of 1797. As then, the law is now to be considered the same as under the previous statutes. We quote the words of the 7th section, Act of 1797, as explanatory of the meaning of the portion of the Act of 1833, at this time under consideration. See Smith's Laws, vol. 3, 299. ' If the intestate shall die seised or possessed of real or personal estate as aforesaid, leaving neither widow nor lawful issue, father or mother, but brothers and sisters of the whole and half blood, or their representatives, the brothers and sisters of the whole blood, and the legal representatives of such of the whole blood as are dead, shall inherit the real estate in fee simple, and the personal estate shall be distributed equally between the brothers and sisters of both the whole and half blood, or their representatives ; but if there are no lawful issue, widow, father or mother, brothers or sisters, or their representatives, of the whole blood, then brothers and sisters of the half blood shall inherit the real estate in fee simple, and the personal estate absolutely,' &c., &c. When we read this quoted section, is there any difficulty in understanding it ? Clearly, when there are brothers and sisters of both the whole and half blood, or their descendants, the former will first take the real estate, and the latter can have no claim to it. They can only inherit in default of the *whole*

[Stark *v.* Stark.]

*blood.* In a case like the present the question of the blood of the ancestors makes no difference.

"Again we find this laid down as the rule of descents under the earlier statutes : Gordon on Dec. 399, 60 ; 1 Reed's Penn. Bl. 507–8 ; Smith's Laws, vol. 3, 153, and inf. note to Act of 1794. We refer also to the case of Preston *v.* Hoskins, 2 Yeates 545, where it is clearly admitted that, under the Act of 1794, this would be the rule as to real estate, though any direction as to personal property (afterwards supplied by the Act of 1797) was omitted.

"It is said that no direct decision can be found in our books upon this now disputed claim of the Act of 1833. The case must frequently have occurred in upwards of thirty years since the adoption of that statute, and in our opinion the reason why we find no express ruling of our Supreme Court upon the point is, that the language of the act, when fairly examined, cannot be misunderstood, and that particularly the ruling has ever followed without change, in the same way for upwards of seventy years, since the Acts of 1794 and 1797. Indirectly, however, meeting the question, we do find more than one decision. The case of of Danner *v.* Shissler, 7 Casey 289, has been cited by the counsel of the plaintiff in the argument, as giving rise to some doubt upon the subject. We do not, however, take this view of the reported case ; in our opinion it plainly recognises the doctrine we have stated above. The case there arose under the 7th section, Act of 1833, when there was neither father nor mother, brother nor sister, nor their descendants, either of the whole or half blood, but other collaterals or next of kin. Under that section, applying to collaterals more distant than brothers and sisters, the law makes no distinction between the whole or half blood, if they descend from a common ancestor. The courts, however, then, expressly say, ' It is sufficient where brothers and sisters inherit from each other, for then the whole blood are preferred.' To whom do they mean they are preferred ? Surely to the half blood, and that is the case before us. Do not all these parties claim *to inherit* from their deceased sister, Mrs. Flagg ? The judge of the Common Pleas, in his opinion reported, page 290, draws the same distinction. Again, in Lane's Appeal, 4 Casey 487, Mr. Justice Woodward, *arguendo,* as to a question under a supplementary act, thus speaks of the purport of the Act of 1833 : ' The words, " when by existing laws entitled to inherit," are introduced to preserve the distinction between collaterals of the whole and half blood, which is so anxiously maintained throughout the Act of 1833.' And again, ' As if they had said we will have grandchildren of deceased brothers and sisters admitted to inheritance *per stirpes,* like children of deceased brothers and sisters, but they shall be

5 P. F. SMITH—5

[Stark *v.* Stark.]

grandchildren of deceased brothers and sisters of the whole or half blood, according to " existing laws." The whole blood first, the half blood afterwards.'

" As we understand the statute, the following rules for the descent of real estate among collaterals are fixed, operating in the following order :—

" 1st. In default of issue and surviving husband or wife, it will vest in the father or mother for life.

" 2d. After the death of father or mother, or if there be no father or mother, then in the brothers and sisters of the whole blood, and their descendants in fee.

" 3d. If there be no brothers or sisters of the whole blood or their descendants, including grandchildren, then in the father and mother, if any, for life or in fee, according to the special circumstances of the case.

" 4th. If no brother, &c., of the whole blood or their descendants, and no father or mother, then in the brothers and sisters of the half blood, being of the blood of the first purchaser.

" Our statute of intestacy in its plain reading and meaning can lead to no other conclusions, and if the half blood cannot inh'erit under that statute, upon what can they found any existing claim or right ? Their *status* is fixed under clear and plain limitations by the act, but even if a doubt be alleged as to this, the old laws of descent will not help them ; and the Acts of 1794 and 1797, if not altered or supplied by that of 1833, under the facts now before us, will certainly give them no aid.

" In our opinion, in the present case, the half-blood brother can have no claim. The brothers and sisters of the whole blood, and the child of the deceased one, are entitled to the property, and judgment in the case then is entered for the defendants."

The plaintiff removed the case to the Supreme Court, and assigned for error the entering of judgment for the defendants.

*Wright & Harrington,* for plaintiffs in error, cited Bevan *v.* Taylor, 7 S. & R. 397 ; Lewis *v.* Gorman, 5 Barr 165, 167 ; Hartman's Estate, 4 Rawle 39 ; Hart's Appeal, 8 Barr 37 ; Danner *v.* Shissler, 7 Casey 289.

There was no paper-book for defendant in error

The opinion of the court was delivered, May 21st 1857, by

WOODWARD, C. J.—We are satisfied with the ruling which the question received in the court below, and affirm the judgment for the reasons there given.

Judgment affirmed.