FINLEY et al. v. ABNER.

(Circuit Court of Appeals, Eighth Circuit. March 29, 1904.)

No. 1,924.

1. DESCENT—KANSAS STATUTE—CONSTRUCTION.

The statute of Kansas relating to descent (Gen. St. 1889, c. 33, §§ 20, 21, 29) which by act of Congress (Act Feb. 8, 1887, 24 Stat. 389, c. 119, § 5)· is made to govern the descent of lands allotted in severalty to the members of certain tribes in Indian Territory, provides that, if an intestate leaves neither husband, nor wife, nor issue, his estate shall go to his parents, and, if his parents be dead, shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the ownership and possession of the portion thus falling to their share, or to either of them, and that "children of the half blood shall inherit equally with children of the whole blood." *Held*, that the word "children," as so used, should be construed as meaning "kindred," and that, under such provision, where an Indian woman, whose parents were dead, died unmarried and without issue, but leaving a half-brother, he inherited her land, to the exclusion of her uncles and cousins.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 69 S. W. 911.

This suit was brought in the United States Court for the Northern District of the Indian Territory by George W. Finley, Alfred F. Barnes, Estella Staton, Mabel Staton, and Claudie Staton against Joseph Abner for the partition of a tract of land. The plaintiffs claim to be the owners of an undivided one-half of the property, and concede to the defendant the ownership of the remaining interest. All of the parties claim title through one Edith Abner, to whom, as an Indian, the land had been allotted and patented by the United States, and who died intestate in April, 1890, without husband, or issue, or other kin nearer than her half-brother. The common father of the defendant, Joseph Abner, and the deceased Edith, was Dennis W. Abner. His first wife was the mother of Joseph; his second wife was the mother of Edith. He outlived both wives, and, dying, left surviving him his only children, Joseph and Edith, half brother and sister. The plaintiffs were uncles and cousins of Edith Abner on the side of her deceased mother. By one of the acts of Congress providing for the allotment in severalty of lands to Indians of the tribe and class to which Edith Abner belonged, the laws of Kansas were adopted as furnishing the rules with respect to the descent and partition of such lands. Act Feb. 8, 1887, 24 Stat. 389, c. 119, § 5. The provisions of those laws, pertinent to this case, are found in sections 20, 21, and 29 of the act concerning descents and distributions (Gen. St. Kan. 1889, c. 33), and they are as follows:

"Sec. 20. If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents.

"Sec. 21. If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue."

"Sec. 29. Children of the half blood shall inherit equally with children of the whole blood. Children of a deceased parent inherit in equal proportions the portion their father or mother would have inherited, if living."

The claim of the plaintiffs is that upon the death of Edith Abner, both of her parents being dead, one half of her estate went through her father, and thence down to Joseph Abner, the defendant, and the other half went through her mother to her mother's parents, and, they being also dead, thence down

to her uncles and cousins as the sole heirs of her maternal grandparents, as well as the sole heirs of her mother. Joseph Abner relies upon section 21 and the first clause of section 29, supra, and claims that in virtue of the provisions of the latter he occupies the position of a brother of the full blood. He also contends that, as their common father survived the mother of Edith, no inheritance could be traced through the latter, and that he, as the sole heir of the father, takes the entire estate. The cause was submitted upon the pleadings and an agreed statement of facts, and resulted in a judgment for the defendant. The judgment was affirmed by the United States Court of Appeals for the Indian Territory (69 S. W. 911), and is now before this court for review.

S. C. Fullerton and Geo. B. Denison, for plaintiffs in error.
D. W. Talbot and W. H. Kornegay, for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

If Joseph Abner, in respect of capacity to inherit from his deceased half-sister, sustained to her a relation equivalent to that of a brother of the full blood, the conclusion necessarily follows that under the laws of Kansas he takes the entire estate. In the matter of inheritance, a full brother or sister of an intestate takes precedence of uncles and cousins. The crucial question, therefore, is whether a half-brother possesses the inheritable quality of a brother of the full blood. The first clause of section 29 of the Kansas act concerning descents and distributions provides that "children of the half blood shall inherit equally with children of the whole blood." We must agree with counsel that this provision is somewhat obscure, and that the terms employed do not clearly indicate the legislative intent. If the word "children" is to be taken in the sense of "offspring" or "issue of the body," it is difficult to perceive how, in the very nature of things, there could be children of the half blood. Every child is of the full blood of both of its parents. No child can be of the half blood of either of its parents. If a man has been twice married, both wives bearing children to him, those of the first wife are her children of the full blood, but are not of the blood at all of the second one, and so of the children of the second wife. But all of the children are of the full blood of their common father. The phrase "of the half blood" necessarily signifies that the consanguinity is collateral, rather than lineal. The term "children" was not happily chosen for use in connection with collateral kinship, but such an ambiguity or inaptness of words will not justify us in ignoring the force and effect of the clause, when properly construed. It is presumed that every provision was intended to serve some definite purpose. The intent of a statute is its vital, living spirit, and it is the duty of courts, when called upon, to ascertain and give effect to such intent, if possible, having due regard to the language in which it is expressed. In the performance of this duty it is sometimes helpful and always proper to consider the conditions which led to the enactment.

By the common law of England kindred of the half blood were wholly excluded from inheritance, even though such exclusion resulted in an escheat of the estate to the crown. The manifest harsh-

ness of this rule, and the weakening of the ancient doctrine of feudal tenure out of which it grew, led to a modification by an act of Parliament; and, in the spirit of departure from the old institutions, laws have been enacted in nearly all, if not all, of the states of this country, placing kindred of the half blood, in respect of their inheritable capacity, wholly or partly in the class of those of the whole blood. In some states a distinction is made between property acquired by inheritance and that acquired by purchase, the old rule being retained as to the former; in other states a distinction is made between personalty and realty. In some the kindred of the half blood are given a fractional interest in comparison with that which is given to those of the whole blood; and in other states all differences in capacity to inherit are wholly abolished. Gardner v. Collins, Fed. Cas. No. 5,223; Id., 2 Pet. 58, 7 L. Ed. 347; Stone v. Doster, 50 Ohio St. 495, 35 N. E. 208; Baker v. Chalfant, 5 Whart. 477; Appeal of Lynch, 132 Pa. 422, 19 Atl. 281; Oglesby Coal Co. v. Pasco, 79 Ill. 164; Moore v. Abernathy, 7 Blackf. 442; Armington v. Armington, 28 Ind. 74; Clay v. Cousins, 1 T. B. Mon. 75; Petty v. Malier, 15 B. Mon. 591; Keller v. Harper, 64 Md. 74, 1 Atl. 65; Larrabee v. Tucker, 116 Mass. 562; Rowley v. Stray, 32 Mich. 70; Fatheree v. Fatheree, 1 Walk. 311; Prescott v. Carr, 29 N. H. 453, 61 Am. Dec. 652; Deadrick v. Armour, 10 Humph. 588; Chaney v. Barker, 3 Baxt. 424; Marlow v. King, 17 Tex. 177; Stark v. Stark, 55 Pa. 62.

It is worthy of note in this connection that the only provision in the entire body of the laws of Kansas directly touching this subject is contained in the clause under consideration. Upon a view of the ancient rule and the prevailing departure therefrom, we can have no doubt that in its enactment it was the purpose to follow the trend of modern legislation, and consequently that its effect is to permit kindred of the half blood to inherit equally with those of the full blood; the term "children" being construed as meaning "kindred." This being true, what is the result? Joseph Abner is placed in the position of a full brother of the intestate. The law says, in effect, that he shall inherit equally with a brother of the full blood. There is no ambiguity in the measurement of the interest which he would take in that capacity. Larrabee v. Tucker, supra. As a full brother of the intestate, Joseph Abner would take the entire estate of the intestate, to the exclusion of her uncles and cousins. Being a half-brother, with equal rights of inheritance, the same result naturally follows. It is suggested that by this construction effect is not given to the second clause of the same section, which provides that "children of a deceased parent inherit in equal proportions the portion their father or mother would have inherited, if living," and that a proper application of this clause to the case in hand would permit of the inheritance of the plaintiffs as heirs of the mother of the intestate. The purpose of this second clause was to apply a limited rule of representation per stirpes to an appropriate state of facts pertaining to collateral inheritance in cases of intestacy; but there is no condition in the case before us which authorizes the use of the rule. We have, instead, a near relative, who is clothed with all of the rights of a brother, and who, under the law, is entitled to take the entire estate. The existence of a

half-brother of the intestate, possessing the inheritable quality of a brother of the full blood, necessarily precludes an ascent along the ancestral line for the discovery of uncles and cousins, as is authorized by the twenty-first section of the same act. Whenever, in the plan of descent and distribution prescribed by law, there is found a person who possesses the right to take the entire estate of an intestate, the provisions applying to those who are more remote in relationship become of no moment. These conclusions render it unnecessary to consider the effect upon the rights of the parties to the suit which might under different conditions flow from the fact that the common father of Joseph Abner and the intestate survived her mother, through whom the plaintiffs claim.

The judgment will be affirmed.